Matter of Shoreham-Wading Riv. Cent. Sch. Dist. v Town of Brookhaven Indus. Dev. Corp. (2025 NY Slip Op 51888(U))

[*1]

Matter of Shoreham-Wading Riv. Cent. Sch. Dist. v Town of Brookhaven Indus. Dev. Corp.

2025 NY Slip Op 51888(U)

Decided on December 2, 2025

Supreme Court, Suffolk County

Matthews, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 2, 2025
Supreme Court, Suffolk County

In the Matter of the Shoreham-Wading River Central School District, 
 SHOREHAM-WADING RIVER CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION, and 
 JAMES SMITH, Education of the Shoreham-Wading River Central School District, Petitioners-Plaintiffs,

against
Town of Brookhaven Industrial Development Corporation, and 
 KCE NY 31, LLC (a/k/a) Key Capture Energy, LLC., Respondents-Defendants.

Index No. 614627/2025

Plaintiff's Attorney: 
Law Office of Guercio & Guercio
77 Conklin Street
Farmingdale, NY 11735
Defendants' Attorneys:
Nixon Peabody, LLP
40 Fountain Plaza
Suite 500
Buffalo, NY 14202
[attorney for Town of Brookhaven Industrial]
Harris, Beach, Murtha, PLLC
333 Earle Ovington Blvd
Suite 901
Uniondale, NY 11553
[attorney for KCE]

James F. Matthews, J.

Upon the following papers read on respondents' motion to dismiss this hybrid Article 78 proceeding and Declaratory Judgment action, e-filed documents NYSCEF numbered 16 through 24, 26 through 32, and upon due deliberation and consideration given to the foregoing papers, it is hereby
ORDERED, that respondents' motion to dismiss is granted and the combined petition/complaint is dismissed.
This hybrid Article 78 proceeding/Declaratory Judgment action brought by Shoreham-Wading River Central School District, Shoreham-Wading River Central School District Board of Education, and James Smith ("petitioners") seeks a declaratory judgment that the methodology employed by respondent Town of Brookhaven Industrial Development Corporation ("TOBIDA") to assess the value of the battery storage systems proposed to be constructed and operated by respondent KCE NY 31, LLC ("KCE") was "unlawful, arbitrary and capricious and an abuse of discretion." Pursuant to CPLR Article 78, petitioners seek an order annulling and deeming null and void the TOBIDA resolution adopted on February 5, 2025 (see NYCEF #9) authorizing a payment in lieu of taxes ("PILOT") agreement and lease agreement. Although denoted "Motion Seq. 001" in NYCEF, the underlying merits of the petition-complaint are not presently before the Court. The only motion before the Court is respondents-defendants motion to dismiss the petition-complaint because petitioners lack standing and/or failed to join a necessary party, "Motion Seq. 002" (see NYCEF # 16, 17).
Respondent TOBIDA is vested with statutory authority [FN1]
to assist with the acquisition of certain industrial development projects as authorized by statute. KCE applied to TOBIDA for assistance in the acquisition of a long term ground leasehold interest in a 2.28 acre portion of a larger parcel for the purpose of construction of a battery energy storage system, and appurtenant facilities, for the residents of the Town of Brookhaven in that it will store excess energy and interject it back in the PSEG Long Island grid as needed (collectively, "the BESS Project"). There is no issue raised regarding the authority of TOBIDA to grant financial assistance for the BESS Project. Pursuant to its statutory framework and authority, on February 5, 2025, TOBIDA adopted a resolution which authorized financial assistance to the BESS Project in the form of (a) exemption from sales and use taxes, and (b) abatement of real property taxes as set forth in a PILOT schedule that was attached to the resolution. The disbursement of PILOT payments was required to be made according to the current pro-rata allocation to each affected taxing jurisdiction, including petitioner, as required by General Municipal Law §858(15). Also attached to the resolution was the cost benefit analysis developed pursuant to General Municipal Law §859-a(5)(b).
Petitioner does not challenge TOBIDA's authority to authorize financial assistance to KCE in the forms set forth above, including a PILOT agreement. Petitioner raises no objection to [*2]the authority to grant an abatement of real property taxes and to enter into a PILOT agreement, the stated purpose of which is to provide KCE with an obligation to make payments in lieu of taxes which are less than what would be owed if the abatement of real property taxes were not granted. Of significance is that the PILOT payments are for a twenty (20) year period, after which real property taxes would be assessed at full value of the then existing facilities.
Petitioners' sole claim is that the school district is due larger payments than that set forth in the PILOT resolution, allegedly because the methodology used by TOBIDA to determine the amount of the payments to be due was arbitrary and capricious, unlawful and an abuse of discretion. Petitioner claims that the methodology by which PILOT payments were determined was illegal and, as a result, the PILOT payments are less than what, in petitioner's opinion, should be paid due to the flawed methodology. If the PILOTs were greater, then the school district would receive more revenue, which would result in an overall lower school tax rate.
On June 8, 2022, TOBIDA adopted the policy which set the methodology for determining fixed PILOT payments for battery energy storage projects applicable to the BESS Project. TOBIDA developed and adopted this policy based on the recommendation of staff after consultation with the New York State Energy Research and Development Authority, energy developers, stakeholders and their legal counsel. 
The respondents' pre-answer motion to dismiss seeks dismissal because none of the petitioners have standing to maintain this proceeding and action, the owner of the property is a necessary party which petitioner failed to join, and the statute of limitations has now run. Petitioner argues that the school district has standing because (a) it is uniquely impacted by the proposed PILOT embodied in the February 5, 2025 resolution, (b) it is a third-party beneficiary of the proposed PILOT agreement, and, finally, (c) the individual petitioner-plaintiff James Smith, as the owner of residential real property within the district, has common-law taxpayer standing and/or standing pursuant to State Finance Law § 123-b. Petitioner specifically disclaims any challenge to the valuation of the subject property. 
The Court finds that petitioner-plaintiff school district lacks standing in this action-proceeding consistent with established precedent binding upon this Court. With respect to challenges to governmental action, standing requires "injury in fact, which harm 'falls within the "zone of interests" or concerns, sought to be promoted or protected by the statutory provision under which the agency has acted'" (see Colella v Board of Assessors of County of Nassau, 95 NY2d 401, 409-410, 741 NE2d 113 [2000], quoting Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 773, 573 NE2d 1034 [1991]). Courts which have addressed school district standing in the same or similar contexts have all reached the same conclusion. In Goshen v Town of Wallkill Industrial Development Agency (222 AD2d 475, 476 [2d Dept 1995]), the Court found that the plaintiff-petitioner Goshen Central School District lacked standing to challenge a PILOT, stating: "the plaintiff-petitioner, not being a taxpayer, is not aggrieved by the method of disbursement of the PILOT funds, even if that method deprives the plaintiff-petitioner of tax revenues (citations omitted). The aggrieved party is the taxpayer, who will have to shoulder any additional tax burden by the failure to disburse adequate PILOT funds to the plaintiff-petitioner or suffer a decline in the level of services." In Rome City School District v Oneida County Industrial Development Agency, 2012 WL 13253936, Index. No. 2011-002431 (Sup. Ct. Oneida Co., 2012), the Court stated:
The Petitioners here are certainly not tax payers, and have not demonstrated how they are [*3]aggrieved, even if they are deprived of tax revenue. Moreover, it is the Rome area tax payers that may be aggrieved in that they may have to absorb the additional tax burden or suffer a reduction in services provided by the school district (citing Goshen, supra) . . . Beyond the Goshen decision, the Court finds that the harm alleged by the Petitioners is insufficient and unsubstantiated. The 'injury in fact' requirement of standing requires that the petitioners 'will actually be harmed by the challenged [governmental] action' (New York State Assoc. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). Yet as discussed above, it is the tax payers that could potentially face higher taxes or suffer reduced services and thus, actual injury. Petitioners' assertion that they will not be able to increase their tax levy limit is mere speculation. Section 2033-a(6)(a) of the Education Law clearly provides that upon a 60% voter approval, the tax levy limit contained in the proposed budget may exceed the formula amount. There is no evidence in the record that petitioners have or will be unable to pass a budget." Petitioner-plaintiff school district is not a taxpayer and has no injury in fact. The allegation that they would have to impose a higher tax rate because the amount of the PILOT payments is not more does not constitute an injury in fact. Moreover, the claims as set forth in the petition-complaint are not within the zone of interests or concerns of General Municipal Law § 858. Under that statutory authority, it is the purpose of TOBIDA to grant real property tax abatements, among other financial assistance, which is not remotely related to the school district's thirst for lesser grants of financial assistance in the form of higher PILOT payments. It is apparent that the interest the school district is asserting (a lower property tax abatement) is the polar opposite of the purposes for which agencies such as TOBIDA exist. Moreover, that statutory authority to grant abatement of real property taxes is statutorily vested in the discretion of a duly formed and authorized industrial development agency pursuant to General Municipal Law § 858. 
Plaintiff-petitioner also claims standing as a third-party beneficiary based upon the authority of Steel Los III/Goya Foods, Inc. v Board of Assessors of County of Nassau, (10 NY3d 445, 889 NE2d 453 [2008]). This reliance is misplaced. While the Court did find that the school district was a third-party beneficiary by virtue of General Municipal Law § 858(15), it did so in the context of finding that the respondent County of Nassau could not charge back to the school district PILOT overpayments. The Court ruled that PILOT payments were "assessments" and thus were required to be treated as all other real property tax assessments with respect to the "no charge-back" provision in Nassau County Administration Code § 6-26.0(b)(3)(c). This ruling does not grant general standing for a taxing jurisdiction, such as a school district, to bring suit to challenge the amount of PILOT payments or determinations to grant a real property tax abatement in the form of a PILOT or to extend a PILOT (see Valley Stream Central High School District v Town of Hempstead Industrial Development Agency, Index No. 614446/2024, Order dated April 11, 2025 [Sup Ct, Nassau County, 2025]). This decision does not affect the line of authority finding that a school district lacks standing to maintain an action or proceeding challenging the amount of a PILOT duly authorized by an industrial development agency such as TOBIDA. A plain reading of General Municipal Law §858(15) supports this conclusion. Affected tax jurisdictions, including school districts, are guaranteed to receive their pro-rata share of PILOT payments in the same apportionment of real property taxes received by the taxing jurisdiction. The Court found in Steel Los III/Goya Foods, supra, that affected taxing [*4]jurisdictions are also entitled to be treated the same as non-exempt properties regarding the no-charge back provisions of the Nassau County Administrative Code. Nothing in the statute nor in this case supports a broad grant of standing to affected taxing jurisdictions to challenge the amount of PILOT payments granted.
Petitioners also place heavy reliance on Matter of Barker Central School District v Niagara Industrial Development Agency (62 AD3d 1239 [4th Dept 2009]). That case is distinguishable because the respondent Niagara County Industrial Development Agency was required by its Uniform Tax Exemption Policy to grant tax abatement relief only if warranted based upon financial need. This unique requirement acted as a condition precedent to the granting of the financial assistance in the form of tax abatements/exemptions. In any event, there is nothing in the decision supporting the broad assertion by petitioners that they have standing to challenge all aspects of PILOT payments. Indeed, in Nearpass v Seneca County Industrial Development Agency, (152 AD3d 1192, 1194 [4th Dept 2017]), the same court that decided Barker rejected a broad application of that holding, stating that Barker " . . . is controlling on the issue of financial necessity as a prerequisite for SCIDA (Seneca County Industrial Development Agency) financial assistance." Nearpass also found that its petitioners lacked standing to challenge the SCIDA determination " . . . because it was based on a flawed appraisal which allegedly undervalued the project for tax assessment calculations . . . " This is exactly the claim that petitioners make in the case at bar: that the PILOT payments undervalued the BESS project due to a flawed valuation appraisal methodology.
Plaintiff-petitioner James Smith claims common-law taxpayer standing as a residential homeowner who pays real property taxes and claims injury due to the amount of the PILOT. This claimed loss of tax revenues to taxing districts by PILOT is not an injury that is "distinct from other members of the general public (see Society of Plastics Indus. v County of Suffolk, 77 NY2d 774, 573 NE2d 1034 [1991]; Quigley v Town of Ulster, 66 AD3d 1295, 1296 (3d Dept 2009]). Neither does State Finance Law § 123-b(1) apply because there is no claim " . . . that state funds have been unlawfully expended" (Id. at 1297; see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 813, 798 NE2d 1047 [2003]).
The foregoing ruling granting defendants-respondents' motion to dismiss based on standing makes it unnecessary to reach the question whether the complaint-petition should be dismissed due to failure to join a necessary party, to wit, the owner of the subject property. Had it been necessary to reach this issue, however, the Court would have found that the owner is not a necessary party pursuant to CPLR §1001. "The definition of a necessary party has been strictly construed and is limited to 'those cases and only those cases where the determination of the court will adversely affect the rights of nonparties'" (see Schulz v DeSantis, 218 AD2d 256, 260 [3d Dept 1996], emphasis added, quoting Matter of Castaways Motel v Schuyler, 24 NY2d 120, 247 NE2d 124 [1969]). Under the circumstances of this case, the owner of the property is merely a lessor, and its contractual agreements with KCE continue to exist separate and apart from the amount of any PILOT granted — or not granted — by TOBIDA. There is no allegation that any impact would result to the owner by this Court's grant of the requested relief. There is no allegation that the agreement between respondent KCE and the owner of the property was contingent upon any aspect of KCE's application for financial assistance from TOBIDA. If the KCE contract with the property owner was in any way contingent upon the PILOT, then this issue would have to be re-visited.
Accordingly, based upon the foregoing, the complaint-petition is dismissed.
The foregoing constitutes the decision and Order of the Court.
Dated: December 2, 2025
Riverhead, New York
E N T E R:
Hon. James F. Matthews, JSC

Footnotes

Footnote 1: Title 1 of Article 18-A of the General Municipal Law of the State of New York, as amended, and Chapter 358 of the Laws of 1970, as amended from time to time.